## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FRANCIS EUGENE REED, JR.**                      **CIVIL ACTION**

**versus**                                        **NO. 13-543**

**N. BURL CAIN, WARDEN (LSP)**                    **SECTION: "B" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Francis Eugene Reed, Jr., is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On September 11, 2009, he was convicted of two counts of

aggravated rape under Louisiana law.[1]  On October 8, 2009, he was sentenced on each count to a concurrent term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]   On October 29, 2010, the Louisiana First Circuit Court of Appeal affirmed his convictions, amended his sentences to provide that they be served at hard labor, and affirmed the sentences as amended.[3]  Petitioner did not seek review of that judgment by the Louisiana Supreme Court.[4]

On November 7, 2011, petitioner, through counsel, filed an application for post-conviction relief with the state district court.[5]  That application was denied.[6]  His related writ applications were then likewise dismissed by the Louisiana First Circuit Court of Appeal on July 27, 2012,[7] and by the Louisiana Supreme Court on March 15, 2013.[8]

---

[1] State Rec., Vol. IV of VI, trial transcript, pp. 935-36; State Rec., Vol. I of VI, minute entry dated September 11, 2009; State Rec., Vol. I of VI, jury verdict form.

[2] State Rec., Vol. IV of VI, transcript of October 8, 2009; State Rec., Vol. I of VI, minute entry dated October 8, 2009.

[3] State v. Reed, No. 2010 KA 0571, 2010 WL 4272897 (La. App. 1st Cir. Oct. 29, 2010); State Rec., Vol. V of VI.

[4] See Rec. Doc. 1-1, p. 4.

[5] State Rec., Vol. V of VI.

[6] State Rec., Vol. V of VI, Order Dismissing Application for Post-Conviction Relief dated March 21, 2012.

[7] State v. Reed, No. 2012 KW 0905 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. V of VI.

[8] State v. Reed, 110 So.3d 132 (La. 2013) (No. 2012-KP-1944); State Rec., Vol. V of VI.

On March 25, 2013, petitioner, through counsel, filed the instant federal application for *habeas corpus* relief claiming that he received ineffective assistance of counsel both at trial and on appeal.[9]  The state concedes that the application is timely and that petitioner exhausted his remedies in the state courts; however, the state argues that petitioner's underlying claims have no merit.[10]  Petitioner has filed a reply to the state's response.[11]

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

[9] Rec. Doc. 1.

[10] Rec. Doc. 12.

[11] Rec. Doc. 16.

determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the

facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However,

the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no

clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that

the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552

U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535

U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent

simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of

the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue

the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

       The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## II.  Facts

       On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> Defendant and his wife, Sonja Reed, were married in 1998. Sonja had two daughters from a previous marriage, K.P. (hereinafter "K.P.1"), born November 26, 1991, and her younger sister, K.P. (hereinafter "K.P.2"), born July 25, 1993.[FN2]  The family lived in Covington.  In 2005, K.P.2 wrote to her friend a note that suggested defendant was sexually abusing K.P.2 and her sister, K.P.1.  K.P.2's friend gave the note to her mother's fiancé who, in turn, contacted the Office of Community Services (OCS).

[FN2] In the indictment, Count 1 refers to K.P.2 and Count 2 refers to K.P.1.

Luanne Mayfield, with the OCS in St. Tammany Parish, and Detective Rachel Smith, with the St. Tammany Parish Sheriff's Office, investigated the allegations of abuse. Mayfield testified at trial that K.P.2 told her she and her sister had been sexually abused by defendant. Defendant orally and vaginally raped both girls, and they were forced to perform oral sex on defendant. According to K.P.2, the abuse lasted for about four years. Detective Smith testified at trial that K.P.2 gave her essentially the same account of sexual abuse that she had given to Mayfield.

A month after the initial allegations of abuse, the girls were taken to Children's Hospital in New Orleans, where they underwent full physical examinations. The results of the examinations were normal. Given the time between the initial report of abuse and the medical examinations, Dr. Adriana Jamis, with the Children's Hospital, testified at trial that she would expect to see a normal examination. Subsequently, both girls were interviewed at the Children's Advocacy Center (CAC) in Covington. The information the girls provided at these interviews regarding defendant's sexual abuse of them was consistent with the testimony they provided at trial.

K.P.2 testified at trial that when she was seven or eight years old, defendant forced her to perform oral sex on him. On other occasions, defendant engaged in vaginal intercourse with K.P.2 and performed oral sex on her. K.P.2 testified that for four or five years, some sexual act occurred between her and defendant at least three times a week. K.P.2 also remembered on one occasion seeing defendant rape her sister.

K.P.1 testified at trial that when she was in the third grade, defendant performed oral sex on her. Subsequently, defendant began engaging in vaginal intercourse with K.P.1. She also performed oral sex on defendant. K.P.1 testified defendant performed some sexual act on her about three times a week. When asked about the first time she realized defendant was also abusing her sister, K.P.1 testified, "It was the first and only time I said no to him to the abuse, and he said, well, if I'm not going to get it from you, I'll get it from somebody else, and he went to my sister's room." On one occasion, defendant forced K.P.1 to perform oral sex on K.P.2. K.P.1's sexual abuse by defendant continued until the end of K.P.1's seventh-grade year.

- 7 -

Defendant testified at trial.  He denied all of the allegations of sexual abuse.  Defendant had two convictions for distribution of cocaine and spent three and one-half years in prison.[12]

### III.  Petitioner's Claims

Petitioner claims that he received ineffective assistance of counsel both at trial and on appeal.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.

---

[12]  State v. Reed, No. 2010 KA 0571, 2010 WL 4272897, at *1-2 (La. App. 1st Cir. Oct. 29, 2010); State Rec., Vol. V of VI.

- 8 -

"[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

- 9 -

Petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings. Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under

those stringently deferential standards, it simply cannot be said that relief is warranted with respect

to petitioner's ineffective assistance of counsel claims.

Petitioner contends that his counsel was ineffective in several respects.  This Court

will address each contention in turn.

Petitioner's first claim is that his trial counsel was ineffective for stipulating to the factual consistency of disputed, material evidence.  Specifically, to avoid having the victims' CAC interviews played for the jury during trial, defense counsel stipulated that their testimony was consistent with their statements in the CAC interviews.[13]  Petitioner argues that the stipulation constituted ineffective assistance because there were in fact discrepancies between the statements and the CAC interviews.  Finding that counsel's choice to enter into the stipulation fell within the ambit of trial strategy, the state district court rejected that claim, holding:

> Trial counsel often choose not to have the victim's interview shown to the jury, as more often than not any discrepancies between the child's interview and the in court testimony are insignificant as weighed against the jury having to hear the child discuss the events that occurred years prior.  In the instant case, the abuse occurred over the course of many years, from 2000 through 2005, the defendant was not indicted until 2007, and the trial commenced in 2009.  Despite petitioner's characterization of the CAC tapes as materially inconsistent with the victims' trial testimony, the court disagrees and determines it was not ineffective assistance of counsel to stipulate to the CAC interviews in order to avoid having them played for the jury.[14]

---

[13]  Petitioner makes much ado about the fact that, in entering the stipulation, defense counsel referenced a conversation, not of record, regarding the stipulation which occurred the day before victims testified.  Petitioner opines that defense counsel therefore must have entered into a binding agreement for a stipulation before the testimony was ever even given.  The Court is unpersuaded. The actual stipulation was not entered until after the victims had testified, and it is just as likely, and actually more likely, that the discussion of the prior day had been to the effect that defense counsel *would agree* to a stipulation *if* the victims in fact testified as anticipated.

[14]  State Rec., Vol. V of VI, Order Dismissing Application for Post-Conviction Relief dated March 21, 2012, at p. 1.

This claim was also rejected by the Louisiana First Circuit Court of Appeal,[15] and by the Louisiana Supreme Court,[16] without additional reasons assigned.

It is clear that counsel's presumably strategic decisions are not to be lightly second-guessed.  For example, the United States Supreme Court has explained:

> *Judicial scrutiny of counsel's performance must be highly deferential.*  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*

Strickland, 466 U.S. 668, 689 (1984) (citation and quotation marks omitted; emphasis added).  In the instant case, petitioner essentially argues that the decision to enter into the stipulation was so wrongheaded that the state court's decision deferring to counsel's strategic choice on this issue was necessarily unreasonable.  For the following reasons, the undersigned simply cannot agree.

An obvious starting point in assessing this claim is to determine whether the discrepancies were in fact even of consequence and whether their exposure would have significantly

---

[15]   State v. Reed, No. 2012 KW 0905 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. V of VI.

[16]   State v. Reed, 110 So.3d 132 (La. 2013) (No. 2012-KP-1944); State Rec., Vol. V of VI.

benefitted the defense.  Accordingly, the Court will examine each of the six discrepancies identified by petitioner.[17]

> 1.    At trial K.P.1 testified that she had never witnessed petitioner engage in sexual acts with K.P.2; however, in the CAC interview, K.P.1 stated that she witnessed petitioner licking K.P.2's vagina.  While this discrepancy is obviously consequential, its revelation could easily have been more harmful than beneficial to the defense.
>
> 2.    At trial K.P.1 testified that she traveled to Biloxi in a separate car from petitioner after the allegations became public; however, in the CAC interview she stated that they traveled together.  This discrepancy seems largely inconsequential, and it does not appear the revelation would have significantly benefitted the defense.
>
> 3.    At trial, K.P.2 testified that petitioner had made her swear on a Bible not to disclose the abuse; however, she made no such statement in the CAC interview.  This discrepancy likewise seems largely inconsequential, and it does not appear the revelation would have significantly benefitted the defense.

---

[17]  The undersigned notes that the CAC videotapes are not included within the state court record submitted to this federal court.  However, petitioner attaches portions of the transcripts from the interviews to his federal application, and the state does not dispute that the victims' testimony varied from their CAC interviews in the respects petitioner alleges.  Therefore, for the purposes of this decision, the undersigned has accepted as true petitioner's allegations concerning the discrepancies.

4.      At trial, K.P.2 testified she was walking out of her room prior to the first incident of abuse; however, in the CAC interview she stated that she was in her room watching television or reading a book. This discrepancy also seems largely inconsequential, and it does not appear the revelation would have significantly benefitted the defense.

5.      At trial, K.P.2 did not testify concerning abuse by anyone other than petitioner; however, in the CAC interview she stated that she had been assaulted by her stepbrother. This was not an actual discrepancy, in that she was not questioned at trial about abuse by others.[18]

6.      At trial, K.P.1 testified that her friend Stephi King interrupted petitioner's sexual assault on a specific occasion; however, in the CAC interview K.P.1 stated that nothing had actually happened to her on *that day*.[19] This discrepancy is arguably consequential and seemingly would have been beneficial to the defense.

---

[18]   Moreover, K.P.2's allegations concerning her stepbrother were extremely vague, and it is not entirely clear to what extent the alleged abuse was actually sexual. K.P.2 was asked, "Has anyone else done anything like this to you before?" She responded: "Whenever I was really, really, really little whenever we lived on Cusachs, my stepbrother. But I can't really remember what happened on my own. I knew I would lay down, and he would be on top of me. But I knew it hurt, but I didn't think anything else. But that's all." Rec. Doc. 1-3, p. 28.

[19]   However, petitioner conveniently ignores the fact that K.P.1 quickly clarified: "Nothing happened that day, you know. I was – I wasn't actually saying nothing happened at all." Rec. Doc. 1-3, p. 22.

On balance, therefore, the discrepancies were largely inconsequential with the rather significant exception of the last one.  However, this Court simply cannot say that bringing that one seemingly significant discrepancy to light would have been so beneficial to the defense as to outweigh the downside of playing the CAC interviews for the jury.  If the CAC interviews had been played, the jury would have been required to sit through yet another recitation of the traumatic abuse allegedly perpetrated in this case, only this time as recounted by the purported victims at even younger and more innocent ages which, presumably, might have made the abuse seem all the more harrowing.  Therefore, at a minimum, playing the CAC interviews would have posed both rewards and risks, and usually courts will not second-guess a decision by counsel to forego exposing a jury to evidence double-edged in nature.  See Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) ("[A] tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance.").  Moreover, while a different attorney might well have validly made the opposite choice regarding the stipulation, it does not necessarily follow that counsel's choice in this case rendered him ineffective.  See Strickland, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

The bottom line is this: as already noted, a federal *habeas* court cannot grant relief unless a petitioner shows the state court's denial of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement*." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (emphasis added). Even if an argument could be made that the state court's denial of this claim was incorrect,

fairminded jurists could obviously disagree on that point.  Therefore, under the AEDPA's stringently

deferential standard of review, *habeas* relief is precluded.

Petitioner's second claim is that his trial counsel was ineffective for failing to prepare

petitioner to testify.  The state district court rejected this claim, holding:

> [P]etitioner's claims that he was tired and ill-prepared to testify are
> without merit.  Petitioner did not appear to be tired or unable to
> handle the rigors of cross-examination.  The trial court noted no
> problems with petitioner's ability to testify at trial, and petitioner has
> not supported his claim that his testimony was adversely affected by
> either fatigue or lack of preparation with any evidence from his
> testimony at trial.[20]

This claim was also rejected by the Louisiana First Circuit Court of Appeal,[21] and by the Louisiana

Supreme Court,[22] without additional reasons assigned.

In support of this claim, petitioner submitted an affidavit from his attorney, Edward

Larvadain, Jr., who stated in pertinent part:

> 7.      ... I had not had the opportunity to brief Mr. Reed on the
> specifics of direct- and cross-examination, to practice
> questioning him, or to prepare him for the rigors of cross-
> examination.
>
> 8.      I anticipated preparing Mr. Reed for his testimony after court
> adjourned on evening of September 10, 2009.
>
> 9.      However, as a result of the Court's ruling, I was unable to
> prepare Mr. Reed for his testimony and he commenced his

---

[20]  State Rec., Vol. V of VI, Order Dismissing Application for Post-Conviction Relief dated
March 21, 2012, at p. 2.

[21]  <u>State v. Reed</u>, No. 2012 KW 0905 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. V of VI.

[22]  <u>State v. Reed</u>, 110 So.3d 132 (La. 2013) (No. 2012-KP-1944); State Rec., Vol. V of VI.

testimony on the evening of September 10, 2009 without the
benefit or assistance of counsel.[23]

Obviously, defense counsel should not have waited to prepare his client based on a

unilateral assumption that he could do it on September 10.  However, even if this Court were to

assume for the purposes of this decision that the unwise choice to delay such preparation constituted

deficient performance, that is only half of petitioner's battle.  In addition, as noted, he must also

prove that prejudice actually resulted.  On that prong of the analysis, petitioner's claim clearly fails.

Petitioner has never explained how either his decision to testify or his testimony itself would have

differed had he been better prepared.  For example, there is no suggestion that he would not have

testified; moreover, he does not specifically identify any additional testimony he would have offered

or any statements that he would have (and, consistent with his oath, could have) omitted.  Rather,

he simply speculates that, if he had been better prepared, he would have come across as more

truthful.  However, "[t]he second prong of Strickland is not satisfied by mere speculation and

conjecture."  Peterson v. United States, Nos. 3:13-CV-0565 and 3:11-CR-0023, 2014 WL 1494031,

at *3 (N.D. Tex. Apr. 15, 2014); accord United States v. Effron, Crim. Action No. 08-71, 2013 WL

56135, at *4 (E.D. La. Jan. 3, 2013) ("Effron's claim that his resentencing counsel did not adequately

prepare him beforehand, and that he would have been more credible as a witness had she done so,

is mere speculation that does not meet the Strickland standard.").  Rather, petitioner must prove that

there is a "reasonable probability" (not a mere possibility) that the result of the trial would have been

different had he been better prepared.  See Crane v. Johnson, 178 F.3d 309, 312 (5th Cir. 1999)

---

[23]  Rec. Doc. 1-2, pp. 40-41.

("For the second prong [of the <u>Strickland</u> analysis], [a petitioner] must show a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome. However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." (citation and quotation marks omitted)).  He simply has not made that showing here, and, therefore, this Court must defer to the state court decision rejecting this claim.

Petitioner's third claim is that his trial counsel was ineffective for failing to object to improper and truncated jury instructions which omitted lesser-included offenses.  In this case, petitioner was charged with aggravated rape of a child under the age of thirteen.  In the jury instructions, the trial judge advised the jury of six responsive lesser offenses:  attempted aggravated rape, forcible rape, attempted forcible rape, sexual battery, simple rape, and attempted simple rape. Petitioner claims that his counsel was ineffective for failing to object on the grounds that the court omitted the following four other lesser responsive offenses listed in La. Code. Crim. P. art. 814(A)(8.1): molestation of a juvenile, attempted molestation of a juvenile, indecent behavior with a juvenile, and attempted indecent behavior with a juvenile.

It has long been noted:

A decision to forgo a charge on lesser included offenses is strategic in nature.  Strategic choices made after reasonable investigation will seldom if ever be found wanting, because we are reluctant to second-guess matters of trial strategy simply because the chosen strategy has failed.

<u>Lake v. Portuondo</u>, 14 Fed. App'x 126, 128 (2nd Cir. 2001) (internal citations and quotation marks omitted); <u>see also</u> <u>United States *ex rel.* Webster v. DeTella</u>, 965 F. Supp. 1124, 1132-33 (N.D. Ill.

1997) ("As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged. ... That [counsel's] strategy misfired is no proof of ineffectiveness; even the best trial attorney may misjudge trial strategy on occasion.").  As one court has explained:

> A failure to request charges on all possible lesser included offenses may be proper trial strategy.  Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt.  Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989) (citations omitted).  "Additionally, counsel's failure to push for inclusion of a special charge on a lesser offense may result from an equally valid strategic choice to avoid a possible compromise verdict, opting instead to try to obtain a hung jury or an outright acquittal." Parker v. Cain, 445 F. Supp. 2d 685, 709 (E.D. La. 2006); see also Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *7 (E.D. La. Dec. 7, 2009). In the instant case, where there was no physical evidence of the rapes and an outright acquittal was certainly possible, this Court cannot say that counsel's failure to press for inclusion of the additional responsive verdicts constituted deficient performance.

Petitioner's fourth claim is that his trial counsel was ineffective for failing to object to the hearsay testimony of Dr. Adriana Jamis who testified concerning a report and notes generated by another physician, Dr. Monica Weiner, who was unavailable for cross-examination.  This claim

was rejected by the state district court,[24] the Louisiana First Circuit Court of Appeal,[25] and the Louisiana Supreme Court.[26]

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance.  In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) (quotation marks omitted); accord Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008).  As already noted, a federal *habeas* court is not to second-guess such strategic decisions through the distorting lens of hindsight but instead are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance.  Strickland, 466 U.S. at 689.

Here, it can hardly be doubted that counsel's decision not to object to the hearsay was a strategic one, in that almost all of the hearsay evidence was in fact favorable to the defense.  Dr. Weiner's ultimate conclusion was that her examination of the victims revealed no physical evidence of sexual abuse.  While the absence of such evidence did not mean that abuse could not have occurred, the absence of physical evidence was obviously information defense counsel would want

---

[24]  State Rec., Vol. V of VI, Order Dismissing Application for Post-Conviction Relief dated March 21, 2012, at pp. 1-2.

[25]  State v. Reed, No. 2012 KW 0905 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. V of VI.

[26]  State v. Reed, 110 So.3d 132 (La. 2013) (No. 2012-KP-1944); State Rec., Vol. V of VI.

the jury to know.  In addition, neither of the victims told Dr. Weiner that they had been sexually abused by petitioner; again, that was information defense counsel would have wanted the jury to hear.  Further, K.P.1 told Dr. Weiner that she had been inappropriately touched by others, specifically her stepbrother and by a boy on a school bus;[27] that, too, would be information defense counsel wanted before the jury.  Because revelation of the hearsay benefitted rather harmed the defense, counsel clearly was not ineffective in failing to object.

Petitioner's fifth claim is that his trial counsel was ineffective for failing to object to the use of religion to bolster the accusers' credibility and to the prosecutor's improper argument of "facts not in evidence."[28]  This claim was rejected by the state district court,[29] the Louisiana First Circuit Court of Appeal,[30] and the Louisiana Supreme Court.[31]  Again, a failure to object is a strategic decision which is generally not second-guessed on *habeas* review, and there is no cause for such second-guessing here because the decision to forego the suggested objections was certainly reasonable.

As to petitioner's former contention, his argument is misplaced.  When K.P.2 took the stand, the prosecutor, as is common with a witness who is a minor, asked her questions to ensure

---

[27]  State Rec., Vol. III of VI, trial transcript, pp. 517-19 and 535-40.

[28]  Rec. Doc. 1-1, p. 2.

[29]  State Rec., Vol. V of VI, Order Dismissing Application for Post-Conviction Relief dated March 21, 2012, at p. 2.

[30]  State v. Reed, No. 2012 KW 0905 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. V of VI.

[31]  State v. Reed, 110 So.3d 132 (La. 2013) (No. 2012-KP-1944); State Rec., Vol. V of VI.

that she knew difference between telling the truth and telling a lie and that she understood her oath and obligation to tell to the truth.  As part of that questioning, he asked her about the part of the oath which required that she swear to God that she would tell the truth, and he asked her whether she in fact believed in God, which she answered in the affirmative.  Petitioner argues that the prosecutor was therefore attempting to bolster K.P.2's credibility before the jury by demonstrating that she believed in God.  However, it is ludicrous to suggest that was the purpose of the questioning; obviously, the prosecutor was simply seeking to ensure that K.P.2 understood the oath she had just taken which referenced God and that she took that oath seriously.  The prosecutor's questioning was not improper, and, therefore, counsel was not ineffective for failing to make a meritless objection to it.  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

As to petitioner's latter contention, he complains that defense counsel was ineffective for failing to object to the prosecutor's following comment during closing argument:  "Has [K.P.2] ever accused anyone else of raping her?  That's serious.  That would be good for you-all to know. No, never happened."[32]  Petitioner argues that the comment is untrue, because in the CAC interview, which was entered into evidence but never played for the jury, K.P.2 stated that she had been abused by her stepbrother when she was younger.  However, even if the prosecutor's statement was untrue,

---

[32]  State Rec., Vol. IV of VI, trial transcript, p. 879.

- 23 -

which is not at all clear,[33] defense counsel's failure to object to this comment did not rise to level of ineffective assistance.  The jury was instructed that the attorneys' closing arguments were not evidence,[34] and there is no reason to believe that they disregarded that instruction.  Moreover, in any event, it simply cannot be said that there is a reasonable probability that the result of the proceeding would have been different if only defense counsel had objected to this passing comment.  Therefore, he cannot show the prejudice necessary to warrant relief.

Petitioner's final claim is that his appellate counsel was ineffective for failing to adequately review, raise, and argue the errors of the trial court and to exhaust direct review before the Louisiana Supreme Court.  This claim was rejected by the state district court,[35] the Louisiana First Circuit Court of Appeal,[36] and the Louisiana Supreme Court.[37]

It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 92 F.3d 1385, 751-52

---

[33]  As already noted, K.P.2's allegation concerning her stepbrother was vague at best.  See *supra* note 18.

[34]  State Rec., Vol. IV of VI, trial transcript, p. 922.

[35]  State Rec., Vol. V of VI, Order Dismissing Application for Post-Conviction Relief dated March 21, 2012, at p. 2.

[36]  State v. Reed, No. 2012 KW 0905 (La. App. 1st Cir. July 27, 2012); State Rec., Vol. V of VI.

[37]  State v. Reed, 110 So.3d 132 (La. 2013) (No. 2012-KP-1944); State Rec., Vol. V of VI.

(1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

        The applicable test to be applied in assessing such a claim is instead whether the issues ignored by appellate counsel were "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000). In this case, they were not.

        On direct appeal in this case, appellate counsel asserted a single claim, i.e. the trial court erred and/or abused its discretion by holding defense counsel in contempt of court in front of the jury.[38] Granted, that was a weak issue which was easily rejected by the Louisiana First Circuit Court of Appeal.[39] That said, it is also clear that the claims petitioner proposes were not, as required, "clearly stronger." He argues that appellate counsel should have asserted the following claims: (1) the trial court erred in omitting responsive verdicts, (2) the prosecutor impermissibly attempted to bolster K.P.2's credibility by asking about her belief in God, and (3) trial counsel was ineffective for failing to object to those errors. However, appellate counsel was precluded from raising the first two of those issues on direct appeal because there had been no contemporaneous objection at trial. La. Code Crim. P. art. 841 ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."). As to the third issue, even if it could have been properly

---

[38] State Rec., Vol. VI of VI, Original Brief on the Merits on Behalf of Defendant/Appellant.

[39] State v. Reed, No. 2010 KA 0571, 2010 WL 4272897, at *2-4 (La. App. 1st Cir. Oct. 29, 2010); State Rec., Vol. V of VI.

raised of direct appeal, which is questionable at best,[40] counsel was not ineffective in failing to make the two objections for the reasons already explained in detail earlier in this opinion.  In summary, although the issue raised on appeal was a weak one, these three proposed issues would have been as weak or, more likely, even weaker.  Therefore, this Court therefore cannot say that there is a reasonable probability that petitioner would have prevailed on appeal if only these three claims had been raised.

Accordingly, under the "doubly deferential" standards of review mandated by the AEDPA, it is evident that petitioner has not shown that the state court's decision rejecting his ineffective assistance of counsel claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As a result, this Court should defer to that ruling and likewise deny the claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Francis Eugene Reed, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[40] See, e.g., State v. Bishop, 68 So.3d 1197, 1207 (La. App. 1st Cir. 2011) ("A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted, rather than on appeal. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy.").

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[41]

New Orleans, Louisiana, this second day of June, 2014.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.